UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARIEF OSMAN SHENDI,<br><br>    Petitioner,<br><br>    v.<br><br>MATTHEW CATE,<br><br>    Respondent. | No. 2:12-cv-02031 TLN AC<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner challenges his 2009 conviction on one count of assault and battery, in violation of Cal. Pen. Code § 243, plus a one-year enhancement pursuant to Cal. Pen. Code § 667.5(b), and a five-year enhancement pursuant to Cal. Pen. Code § 667(a). Petitioner is serving a sentence of twelve years imprisonment.

    This action is proceeding on the original petition filed August 2, 2012, which presents two claims: (1) prosecutorial misconduct, and (2) ineffective assistance of counsel. ECF No. 1 at 7-15. On November 9, 2012, respondent filed an answer. ECF No. 13. On November 26, 2012, petitioner filed a traverse. ECF No. 15. After carefully considering the record, the undersigned recommends that the petition be denied.

/////

/////

## II. Factual Background

The opinion of the California Court of Appeal on direct review contains a factual summary of petitioner's offense. After independently reviewing the record, this court finds this summary to be accurate and adopts it here.

> From February to August 2009, defendant and Aaron Galindo were roommates, living in Sutter County with defendant's stepmother, Mary, and defendant's stepbrother, Greg. Defendant and Galindo shared a room in the house; defendant would use the room when he stayed there a couple days per week, and Galindo would use it the rest of the time. On days when defendant was home, Galindo slept on the couch in the living room.
>
> On the afternoon of August 12, 2009, Galindo was watching television in the living room with his girlfriend, Chrystal Allen. Defendant was the only other person in the house. Galindo asked defendant if he and Allen could use the shared bedroom for "sexual purposes."
>
> After Galindo and Allen left the room, defendant asked Galindo which bed he had used. Galindo responded they used the bed he and defendant both used. Galindo and Allen returned to the living room to watch television, and defendant told them they needed to leave until either Greg or Mary returned. Galindo declined, said he had a right to be there because he paid rent, and suggested he should call Mary to "see what she says." Galindo then used his cell phone to call Mary. When Galindo began speaking to her, defendant got "right in [Galindo's] face." When Galindo asked defendant to step back, defendant started hitting him. Defendant struck Galindo multiple times in the face and head with his fist, and Galindo curled into the fetal position to try to defend himself. Galindo testified defendant struck him continuously for five minutes and that he never struck back. Galindo asked defendant to stop hitting him and offered to leave, but defendant continued the attack.
>
> Allen came out of the bathroom, saw the attack, and yelled at defendant to stop. Defendant told Allen if she did not "shut [her] mouth," he would continue hitting Galindo. Defendant hit Galindo a couple more times, then stopped and asked him to leave again. Galindo was bleeding from the nose and mouth, received a cut on the back of his head, and described a throbbing pain on the side of his face. Galindo asked defendant to bring him his things and defendant did so. Before Galindo and Allen left, Allen called Mary again; defendant became aggravated and threatened to hit Allen if they did not leave. Allen then drove Galindo to his parents' house, where his mother called the police. The police arrived, interviewed Galindo and Allen, and photographed Galindo's injuries. Galindo was treated by ambulance personnel, then transported to the hospital.
>
> Dr. Mark Agness was the emergency room physician who treated Galindo for his injuries. Dr. Agness diagnosed Galindo with facial

2

      trauma, a blow-out fracture of the left eye socket, and a comminuted nasal fracture. Galindo was at the hospital for about five hours and was in pain for about a week and one-half after the attack. Galindo also testified his nose curves to the right and his vision is blurry as a result of the attack.

      Officer Charles Clark of the Yuba City Police Department testified that he interviewed Galindo after the attack. Galindo told Officer Clark he had been attacked and identified defendant as the attacker. Officer Clark and two other police officers went to the residence but did not find defendant. Officer Clark did notice some blood on the porch near the front door. The next day Officer Clark located and interviewed defendant. After waiving his *Miranda* [FN1] rights, defendant told Officer Clark that he was sleeping in his room when Galindo woke him and asked if he and Allen could use the room to change their clothes. Defendant allowed them to use the room; after 10 to 15 minutes, defendant knocked on the door. When Galindo opened the door, defendant noticed he was shirtless and sweaty. Defendant asked Galindo if he had sex in the room and Galindo said yes. Defendant went into the room, smelled "sex," and noticed what appeared to be bodily fluid on his pillow.

      FN1. *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

      Defendant then told Galindo to leave, but he refused. Defendant claimed Galindo said "I'm not letting no nigger tell me what to do." Defendant confronted Galindo, who responded by pushing him. Defendant then attacked Galindo with his fists, and Galindo tried to fight back. Eventually Galindo curled up on the ground and defendant ceased his attack. Defendant then told Galindo and Allen to leave again. After defendant confronted them again on the porch, Galindo and Allen left. Officer Clark did not recall seeing any injuries on defendant, and defendant did not report any injuries from the fight.

      The defense presented only one witness, private investigator Barry Roper. Roper testified that he interviewed Allen and that she told him Galindo had a temper, "a short fuse," and is quick to raise his voice. Defendant did not testify.

Resp't's Lodged Doc. ("LD") 1 at 2-5.

      Following affirmance of his conviction by the California Supreme Court, LD 6, petitioner filed the instant federal action.

III.    <u>Standards Governing Habeas Review</u>

      28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

      (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits

3

in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams, 529 U.S. at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." Benn v.

1  Lambert, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002).

2  A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." Williams, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. See, e.g., Williams, 529 U.S. at 397-98; Wiggins, 539 U.S. at 526-28 & 534; Rompilla v. Beard, 545 U.S. 374, 388-909 (2005); Porter v. McCollum, 130 S. Ct. 447, 454 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. Lockyer, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. Panetti v. Quarterman, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. Id. In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. Id. at 948.

Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz, 533 F.3d at 738 (emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

Relief is also available under AEDPA where the state court predicates its adjudication of a

5

1  claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits
2  this inquiry to the evidence that was before the state court. Even factual determinations that are
3  generally accorded heightened deference, such as credibility findings, are subject to scrutiny for
4  objective reasonableness under § 2254(d)(2). See, e.g., Miller-El v. Dretke, 545 U.S. 231, 240
5  (2005) (rejecting credibility finding as unreasonable in light of the evidence before the state
6  court).

   To prevail, a habeas petitioner must establish the applicability of one of the § 2254(d)
exceptions and also must also affirmatively establish the constitutional invalidity of his custody
under pre-AEDPA standards. Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) (en banc). There is
no single prescribed order in which these two inquiries must be conducted. Id. at 736-37. The
AEDPA does not require the federal habeas court to adopt any one methodology. Lockyer v.
Andrade, 538 U.S. 63, 71 (2003).

IV.  Prosecutorial Misconduct Claim

   Petitioner contends that the prosecutor committed three instances of misconduct during his
trial in violation of his due process rights. All of the alleged instances of misconduct occurred
during the prosecutor's closing argument: first, the prosecutor shifted the burden regarding self-
defense to petitioner; second, the prosecutor misstated the law regarding self-defense by
suggesting, among other things, that petitioner could have retreated; and third, the prosecutor
improperly vouched for Galindo by referring to him as a "victim." Pet. at 12. Respondent argues
that federal habeas review of petitioner's prosecutorial misconduct claim is barred because it was
rejected by the court of appeal on the ground of forfeiture. Answer at 6. For the reasons
discussed below, this court finds that petitioner's prosecutorial misconduct claims are
procedurally defaulted and federal habeas review is therefore barred.

   A.  Legal Standard for Procedural Default

   Procedural default is an affirmative defense. Bennett v. Mueller, 322 F.3d 573, 585 (9th
Cir. 2003). As a general rule, "[a] federal habeas court will not review a claim rejected by a state
court 'if the decision of [the state] court rests on a state law ground that is independent of the
federal question and adequate to support the judgment.'" Walker v. Martin, 131 S.Ct. 1120, 1127

(2011) (quoting Beard v. Kindler, 558 U.S. 53, 55 (2009)); see also Maples v. Thomas, 132 S.Ct. 912, 922 (2012); Greenway v. Schriro, 653 F.3d 790, 797 (9th Cir. 2011); Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Walker, 131 S.Ct. at 1127. In order for a state procedural rule to be found independent, the state law basis for the decision must not be interwoven with federal law. Cooper v. Neven, 641 F.3d 322, 332 (9th Cir. 2011); Bennett, 322 F.3d at 581; LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001); Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000). To be deemed adequate, the rule must be well established and consistently applied. Walker, 131 S.Ct. at 1128; Beard, 558 U.S. at 59; Greenway, 653 F.3d at 797-98; Poland v. Stewart, 169 F.3d 575, 577 (9th Cir. 1999). Even if the state rule is independent and adequate, the claims may be reviewed by the federal court if the petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman, 501 U.S. at 749-50; see also Maples, 132 S.Ct. at 922.

"Under Section 353 of the California Evidence Code, also known as the 'contemporaneous objection rule,' evidence is admissible unless there is an objection, the grounds for the objection are clearly expressed, and the objection is made at the time the evidence is introduced." Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002). Under California's "contemporaneous objection rule," California courts construe broadly the sufficiency of objections that preserve issues for appellate review, focusing on whether the trial court had a reasonable opportunity to rule on the merits of the objection. Id. The Ninth Circuit has held "that the rule is consistently applied when a party has failed to make *any* objection . . . ." Id. (emphasis original) (citing Garrison v. McCarthy, 653 F.2d 374, 377 (9th Cir. 1981)).

B.  The State Court's Adjudication of the Prosecutorial Misconduct Claim

The California Court of Appeal specifically rejected petitioner's allegations of prosecutorial misconduct, finding that his claims were forfeited because defense counsel failed to

object to any of the three instances. In doing so, the court reasoned as follows:

> Defendant's counsel did not object to any of these instances of alleged misconduct. We conclude all defendant's claims of prosecutorial misconduct were forfeited by defense counsel's failure to object in the trial court.
>
> "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion--and on the same ground--the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) "A defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. [Citations.] In addition, failure to request the jury be admonished does not forfeit the issue for appeal if "'an admonition would not have cured the harm caused by the misconduct."' [Citations.] Finally, the absence of a request for a curative admonition does not forfeit the issue for appeal if 'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.' [Citations.]" (*People v. Hill* (1998) 17 Cal.4th 800, 820-821.)
>
> Defendant offers three arguments to avoid forfeiture of his misconduct claims. None has merit.
>
> First, defendant argues he has not waived his right to raise this issue on appeal because the alleged misconduct affected his substantial rights. Defendant cites *People v. Johnson* (2004) 115 Cal.App.4th 1169 and *People v. Johnson* (2004) 119 Cal.App.4th 976 for the proposition that "instructions or arguments which reduce the prosecution's burden of proof potentially affect a defendant's substantial rights, and such errors are not waived by the defendant's failure to object." Both of these cases, however, deal with erroneous jury instructions and not statements made by the prosecutor during closing arguments. Moreover, both cases are based on Penal Code section 1259,[] which does not apply here. Thus, defendant's argument is without merit.
>
> Second, defendant notes that he raised the issue of prosecutorial misconduct at the trial court in his motion for a new trial. However, the motion for a new trial does not constitute a timely objection; defendant made the motion well after the alleged misconduct occurred and after the trial court's ability to cure any potential prejudice with an admonition had expired. Thus, defendant's motion is irrelevant to the forfeiture issue . . . .

LD 1 at 6-8. Because the California Supreme Court denied petitioner's appeal without comment, LD 6, it is presumed that the denial was for the same reason as the California Court of Appeal. Ylst v. Nunnemaker, 501 U.S. 797, 804 n.3 (1991). Because the state court explicitly invoked a state procedural bar as a separate basis for its decision, this court is bound to follow the well-

settled rule that "the independent state grounds doctrine bars the federal courts from reconsidering the issue in the context of habeas corpus review." McKenna v. McDaniel, 65 F.3d 1483, 1488 (9th Cir. 1995) (citing Harris, 489 U.S. at 264 n.10).

It has been the law of the Ninth Circuit for over thirty years that California's contemporaneous objection rule is both independent and, at least where a party has failed to make any objection at all, adequate to support default. Garrison, 653 F.2d at 377; see also Melendez, 288 F.3d at 1125. Thus, federal review of petitioner's claims of prosecutorial misconduct is barred unless petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; White v. Lewis, 874 F.2d 599, 603 (9th Cir. 1989) (where respondent establishes default, burden shifts to petitioner to establish cause and prejudice or miscarriage of justice). For the reasons discussed below, this court finds that petitioner has failed to do so and review of his claim for prosecutorial misconduct is therefore barred.

        C.       Cause and Prejudice

"'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." Coleman, 501 U.S. at 753. Trial counsel's "ignorance or inadvertence" cannot constitute "cause" under this rule "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation." Id. (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). While the Supreme Court has "acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" as cause to excuse a procedural default, Edwards, 529 U.S. at 451 (citing Carrier, 477 U.S. at 488-89), it has held that "[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, [466 U.S. 668 (1984)], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default," Carrier, 477 U.S. at 488. "In other words, it is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor." Coleman, 501

9

1  U.S. at 754 (citing Evitts v. Lucey, 469 U.S. 387, 396 (1985)).

2  To establish "prejudice" the "habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Carrier, 477 U.S. at 494 (omission and emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). "Prejudice [to excuse a procedural default] is actual harm resulting from the alleged error." Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998) (citing Magby v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984)).

In his traverse, petitioner argues that he has "clearly defined several areas of 'prejudice,'" and that he "has clearly met the burden under Coleman . . ., as outlined in that he has established prosecutorial misconduct . . . , denial of effective assistance of Counsel . . . , and remarks by the prosecuting attorney that 'universally condemned the outcome of his case.'" ECF No. 15 at 3 (citing Darden v. Wainwright, 477 U.S. 168, 181 (1986)). To the extent petitioner argues that he establishes cause because of his trial counsel's failure to contemporaneously object during the prosecutor's closing argument, this argument fails.

Petitioner has alleged that his Sixth Amendment right to effective counsel was violated when his trial counsel failed to contemporaneously object to the prosecutor's incorrect statement of the law regarding the burden of proof for self-defense during closing arguments. If petitioner can succeed on a claim that he has suffered ineffective assistance of counsel *and* that he was prejudiced by the state court's procedural ruling, he may overcome the procedural bar to making a habeas corpus claim. For the reasons explained below regarding petitioner's substantive ineffective assistance claim, the undersigned finds that petitioner has not established a Sixth Amendment violation. He has therefore failed to overcome the procedural bar. Consideration of these claims on federal habeas review is therefore barred unless petitioner can establish a miscarriage of justice. Carrier, 477 U.S. at 488; Coleman, 501 U.S. at 754.

D. Miscarriage of Justice

To show that a failure to consider the merits of a claim would result in a fundamental miscarriage of justice, a petitioner must establish factual innocence. See Smith v. Murray, 477

U.S. 527, 537 (1986); Smith v. Baldwin, 510 F.3d 1127, 1139-40 (9th Cir. 2007); Gandarela v. Johnson, 286 F.3d 1080, 1085-86 (9th Cir. 2002); Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001). A petitioner may establish a procedural gateway permitting review of defaulted claims if he demonstrates "actual innocence." Gandarela, 286 F.3d at 1085 (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)); see also Smith, 510 F.3d at 1139. "[I]f a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claim." Schlup, 513 U.S. at 316. The term "actual innocence" means factual innocence, not merely legal insufficiency. Bousley v. United States, 523 U.S. 614, 623-24 (1998); Gandarela, 286 F.3d at 1087. "[A] colorable showing amounts to establishing that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence." Paradis v. Arave, 130 F.3d 385, 396 (9th Cir. 1997) (citation omitted); see also Smith, 510 F.3d at 1140 ("In order to pass through the actual innocence procedural gateway of Schlup, Smith must show that, in light of all available evidence, it is more likely than not that no reasonable juror would convict him of the relevant crime."). "This standard is not easy to meet," Gandarela, 286 F.3d at 1086, and is "very narrow," Sawyer v. Whitley, 505 U.S. 333, 341 (1992).

Here, petitioner merely makes a conclusory argument that he has demonstrated "an overall blatant 'miscarriage' of justice." ECF No. 15 at 3. This court finds that petitioner has failed to set forth any evidence that is sufficient to make it more likely than not that no reasonable juror could convict him of assault and battery. Petitioner has therefore failed to meet the exacting standard for passage through the actual innocence procedural gateway.

For these reasons, this court finds that petitioner has failed to make an adequate showing of cause and prejudice or that this court's failure to consider his prosecutorial misconduct claims will result in a fundamental miscarriage of justice. Accordingly, his prosecutorial misconduct claims are procedurally defaulted and barred from federal habeas review.

////

////

11

1  V.      Ineffective Assistance of Counsel Claim

2         Petitioner claims that he received ineffective assistance of counsel in violation of the Sixth
3  Amendment when his lawyer failed to object to the prosecutor's misstatement of the law during
4  closing argument which shifted the burden of proof regarding self-defense to the petitioner. ECF
5  No. 1 at 13. For the reasons discussed below, this court finds that petitioner has failed to establish
6  a constitutional violation.

7         To establish a constitutional violation based on the ineffective assistance of counsel, a
8  petitioner must show (1) that counsel's representation fell below an objective standard of
9  reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v.
10 Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an
11 adverse effect on the defense. There must be a reasonable probability that, but for counsel's
12 errors, the result of the proceeding would have been different. Id. at 693-94. A reasonable
13 probability is a probability sufficient to undermine confidence in the outcome. Id.

14        With regard to Strickland's first prong, the Ninth Circuit has explained that "[b]ecause
15 many lawyers refrain from objecting during opening statement and closing argument, absent
16 egregious misstatements, the failure to object during closing argument and opening statement is
17 within the 'wide range' of permissible professional legal conduct." United States v. Necoechea,
18 986 F.2d 1273, 1281 (9th Cir. 1993) (citing Strickland, 466 U.S. at 689). The Ninth Circuit has
19 also observed that, for strategic reasons, "for example, many trial lawyers refrain from objecting
20 during closing argument to all but the most egregious misstatements by opposing counsel on the
21 theory that the jury may construe their objections to be a sign of desperation or hyper-
22 technicality." United States v. Molina, 934 F.2d 1440, 1448 (9th Cir. 1991). "Whatever the
23 actual explanation, Strickland requires us to 'indulge a strong presumption that counsel's conduct
24 falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466
25 U.S. at 689).

26        In this case, the prosecutor made the following statement during her closing argument:
27 "The defense has to proof [sic] that the defendant acted in lawful self-defense." Rep.'s Tr. on
28 Appeal ("RT") at 231. Clearly this is a misstatement of the law. However, the circumstances do

not overcome the Strickland presumption that counsel's failure to object was consistent with a reasonable trial strategy. By not objecting to the misstatement, counsel did not draw further attention to it at the time the statement was made. Moreover, petitioner's counsel directly addressed the burden of proof in his closing argument, explicitly correcting the prosecutor's misstatement and explaining that the defense does not have to prove self-defense beyond a reasonable doubt. RT 239. Finally, as discussed below regarding prejudice, the jury was correctly instructed that the court's instructions would take precedence if they conflicted with anything said by the attorneys. Accordingly, this court finds that defense counsel's decision not to object to the prosecutor's misstatement was not objectively unreasonable, and petitioner has failed to establish Strickland's first prong.[1]

This court also finds that petitioner has not established that he was prejudiced by his attorney's failure to object during the prosecutor's closing argument. When evaluating this claim, the California Court of Appeal concluded that the prosecutor's misstatement regarding the law of self-defense was not prejudicial because the prosecutor discussed "the evidence that negated defendants' self-defense claim[,] . . . defense counsel began his rebuttal argument by refuting the prosecutor's misstatement of the law . . ., and most significantly, the jury was properly instructed with CALCRIM No. 3470: 'Right to Self-Defense.'" LD 1 at 9. After a review of the record, this court agrees with the California Court of Appeal that the prosecutor's statements during closing argument did not have a prejudicial effect on the jury's verdict.

The prosecutor's misstatement comprises one sentence of an eleven-page closing

---

[1] To the extent petitioner argues that this court should find his trial counsel was ineffective because the trial court found his counsel to be ineffective, ECF No. 1 at 13-14, this argument is without merit. Petitioner provides the transcript of a January 15, 2010 Marsden Hearing at which his trial counsel was removed. However, contrary to petitioner's assertions, the trial court explicitly found that his trial counsel "properly represented [petitioner] and will continue to do so." Id. at 25. Petitioner's trial counsel defended his actions but also suggested that "it might be wise for this Court to have separate counsel look at everything prior to moving forward to sentencing to determine if there is sufficient error to do something else and add to my motion for new trial." Id. at 25. After hearing both sides, the trial court concluded that "[a]s Mr. Sullinger has filed a motion for new trial, which has not been ruled on, I think Mr. Sullinger's suggestion of appointing another attorney at this point is wise, and even though I don't find that there is a legal reason for appointing another attorney right now, I am going to do that." Id. at 26. Thus, the trial court did not find that petitioner's trial counsel was ineffective, and the hearing transcript provides no support for petitioner's ineffective assistance of counsel claim.

argument.  In the paragraph preceding this misstatement, the prosecutor correctly stated that "the last element that the People have to prove is that the defendant did not act in self-defense."  RT 231.  The prosecutor's argument on self-defense alone spanned eight pages and primarily focused on rebutting petitioner's self-defense claim.  See, e.g., RT 233 ("And now we will walk through how the defendant did not act in self-defense.").  The prosecutor also stated during rebuttal that "[t]he evidence shows and the People have proven beyond a reasonable doubt, a reasonable doubt, that there was no self-defense because [petitioner] did not act in self-defense."  RT 255.  Furthermore, as noted above, petitioner's counsel adequately addressed the prosecutor's misstatement by clarifying for the jury that the prosecutor was wrong about the burden of proof and the defense does not have to prove self-defense.  RT 239.  Considering the totality of the closing arguments, counsel's failure to object to the prosecutor's misstatement did not prejudice petitioner.  The remaining statements made by the prosecutor during her closing argument, as well as defense counsel's explicit correction of the misstatement during his closing argument, served to clarify any confusion regarding the burden of proof.

Moreover, the prosecutor's isolated misstatement was not the only instruction the jury received about the burden of proof regarding self-defense.  The trial judge instructed the jury as follows:

> You must follow the law as I explain it to you even if you disagree with it.  If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions.

Rep.'s Supplemental Tr. on Appeal ("SRT") at 2 (quoting CALCRIM No. 200).  The trial judge also instructed the jury that "[a] defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt."  SRT at 3 (quoting CALCRIM No. 220).  The jury was further instructed by the trial court that "[t]he People have the burden of proof beyond a reasonable doubt that the defendant did not act in lawful self-defense.  If the People have not met this burden, you must find the defendant not guilty . . . ."  SRT at 13 (quoting CALCRIM No. 3470).  Finally, the jury was instructed by the trial judge that

> [n]othing that the attorneys say is evidence.  In their opening

14

> statements and closing arguments, the attorneys discuss their case,
> but their remarks are not evidence, their questions are not evidence.

SRT at 4 (quoting CALCRIM No. 222). These instructions were additionally sent to the jury along with the others in written form. RT 258.

Jurors are presumed to follow the instructions given to them by the court. Penry v. Johnson, 532 U.S. 782, 799 (2001) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)); Zafiro v. United States, 506 U.S. 534, 540-41 (1993). Here, any possible prejudice was cured by the trial court's instructions which included the admonishment that if there is a conflict with the instructions and the attorneys' comments on the law, the jurors must follow the court's instructions. Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985) ("Absent such extraordinary situations, however, we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions."); United States v. Rodrigues, 159 F.3d 439, 451 (9th Cir. 1998) amended by, 170 F.3d 881 (9th Cir. 1999) ("The jury is regularly presumed to accept the law as stated by the court, not as stated by counsel.").

In light of the totality of the prosecutor's closing arguments, petitioner's counsel's clarifying statements during his own closing argument, and the jury instructions given by the trial court, the undersigned finds that there is no reasonable probability that the verdict would have been different had defense counsel presented timely objections. Strickland, 466 U.S. at 694. There is nothing to indicate that the state court ruled in a manner that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Accordingly, this court finds that petitioner's ineffective assistance of counsel claim fails on the merits of both prongs of Strickland, and that petitioner is not entitled to habeas relief on this claim.

////

////

### VI. Motion to Appoint Counsel

In his traverse, petitioner renewed his request for the appointment of counsel. There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). However, 18 U.S.C. § 3006A authorizes the appointment of counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. In the present case, the court does not find that the interests of justice would be served by the appointment of counsel at the present time. Accordingly, petitioner's request for appointment of counsel will be denied.

### VII. Conclusion

Accordingly, IT IS HEREBY ORDERED that petitioner's request for appointment of counsel (ECF No. 15) is denied.

Furthermore, for all the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 3, 2014

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE